MERRILI ESCUE (SBN 185670)
mescue@srclaw.com
**SACKS, RICKETTS & CASE LLP**
162 S. Rancho Santa Fe Road, Suite B-60
Encinitas, CA 92024
Telephone:  858-381-5458
Facsimile:  858-952-0617

*Attorneys for Defendants*
Job Options, Inc., Jeffrey A. Johnson,
Richard Skay, and Jounina Boka

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PIERRE RHODAN, individually, and on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>JOB OPTIONS, INC., a California corporation; JEFFREY A. JOHNSON, an individual; RICHARD SKAY, an individual; JOUNINA BOKA, an individual; and DOES 4 through 10, inclusive,<br><br>Defendants. | Case No. **'19CV1141 CAB BGS**<br><br>[San Diego County Superior Court Case No. 37-2018-00060219-CU-OE-CTL]<br><br>**DEFENDANTS JOB OPTIONS, INC., JEFFREY A. JOHNSON, RICHARD SKAY, AND JOUNINA BOKA'S NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. § 1331 (FEDERAL QUESTION—FEDERAL ENCLAVE—JURISDICTION)** |

## NOTICE OF REMOVAL

TO THE CLERK OF THE ABOVE-ENTITLED COURT, THE PARTIES, AND ALL ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that pursuant to 28 U.S.C. §§ 1331, 1441(a), and 1446, Defendants Job Options, Inc., Jeffrey A. Johnson, Richard Skay, and Jounina Boka (collectively, "Defendants") hereby remove to this Court the above-captioned

-1-

state court action further described below, *Pierre Rhodan, individually, and on behalf of himself and others similarly situated, Plaintiff, vs. Job Options, Inc., a California corporation; Jeffrey A. Johnson, an individual; Richard Skay, an individual; Jounina Boka, an individual; and Does 4 through 10, inclusive*, *Defendants*, pending as case number 37-2018-00060219-CU-OE-CTL in the Superior Court of California, San Diego County (the "Removed Action"), on the grounds that federal question (federal enclave) jurisdiction exists under 28 U.S.C. § 1331, which confers original jurisdiction on the federal district courts "of all civil actions arising under the Constitution, laws, or treaties of the United States." *See* 28 U.S.C. §§ 1331, 1441(a), and 1446.

This Notice of Removal is timely in that Plaintiff first asserted claims against Defendants invoking federal question jurisdiction in his *ex parte* application to continue Defendants' demurrer hearing or for leave to file a second amended complaint, filed and served electronically on May 21, 2019, and this Notice is filed within 30 days of that paper. *See* Fed. R. Civ. P. 6(a); 28 U.S.C. § 1446(b)(3) ("[I]f the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order, or other paper from which it may first be ascertained that the case is one which is or has become removable.").

The following statement is submitted pursuant to 28 U.S.C. § 1446(a):

**I.     FACTUAL BACKGROUND:  THE REMOVED ACTION**

1. In accordance with 28 U.S.C. § 1446(a), attached hereto as **Exhibits A**, **B**, **C**, **D**, and **E** is a copy of the docket and all process, pleadings, and orders served upon Defendants with respect to the Removed Action.

2. Aside from the documents contained in **Exhibits A**, **B, C**, **D**, and **E**, Defendants have not been served with any other process, pleadings, or orders in the Removed Action.

3. On or about November 29, 2018, Plaintiff Pierre Rhodan ("Plaintiff"), proceeding individually, filed a complaint (the "Complaint") against Defendant Job Options, Inc. ("JOI") and thereby commenced the Removed Action against JOI, Plaintiff's former employer, in the Superior Court of the State of California for San Diego County, entitled *Pierre Rhodan, an individual, Plaintiff, vs. Job Options, Inc., a California corporation; and Does 1 through 10 inclusive, Defendants.* JOI was personally served with the Complaint on December 3, 2018. *See* **Exhibit A** (Complaint).

4. In the Complaint, Plaintiff asserted a single cause of action for failure to provide access to employee personnel records in violation of California Labor Code §§ 226, 432, and 1198.5. The Complaint did not allege Plaintiff's position at JOI, nor his work location, but rather only that he was "employed" in "California as a nonexempt employee and paid [] on an hourly basis." *See id.* (Complaint), at ¶ 12. Thus, as no employment location had been identified, let alone one on a federal enclave, the Complaint did not invoke any federal question (federal enclave) jurisdiction.

5. Thereafter, on or about January 25, 2019, Plaintiff amended the Complaint in the Removed Action to name three JOI employees, Jeffrey A. Johnson, Richard Skay, and Jounina Boka, respectively, as defendants in place of the fictitiously-named Does 1, 2, and 3 (the "Amended Complaint"). Defendant Jounina Boka was personally served on February 4, 2019, and Defendants Jeffrey A. Johnson and Richard Skay were served by substituted service on February 4, 2019. *See* **Exhibit B** (Amended Complaint). The Amended Complaint did not allege Plaintiff's position at JOI, nor his work location, but rather only that he was "employed" in "California as a nonexempt employee and paid [] on an hourly basis." *See id.* (Amended Complaint), at ¶ 12. Thus, as no employment location had been identified, let alone one on a federal enclave, the Amended Complaint also did not invoke any federal question (federal enclave) jurisdiction.

6.     On or about March 25, 2019, Plaintiff filed a first amended complaint (the "FAC") in the Removed Action against Defendants.  See **Exhibit C** (FAC). Plaintiff served the FAC on Defendants on March 25, 2019 via mail and email. The FAC purports to proceed both as a class action and a Private Attorneys General Act ("PAGA") representative action, bringing eight causes of action, mostly wage and hour, against Defendants for:  (1) failure to provide timely access to payroll records in violation of California Labor Code § 226; (2) failure to pay minimum/regular wages; (3) meal break California Labor Code violations; (4) failure to provide accurate paystubs in violation of California Labor Code § 226; (5) failure to make payments within the required time; (6) failure to pay for all accrued paid time off/vacation pay; (7) remedies under PAGA (California Labor Code § 2698 *et seq.*); and (8) unfair business practices in violation of California Business and Professions Code § 17200 *et seq.* (the "UCL").  *See id.* (FAC).  Like the Complaint and Amended Complaint, the FAC again describes Plaintiff's employment without reference to any position or work location:  "During all times relevant, Defendants employed Plaintiff RHODAN and more than 100 similarly aggrieved employees in California as nonexempt employees and paid them on an hourly basis." *See id.* (FAC), at ¶ 20.  It also provides no basis for federal question (federal enclave) jurisdiction because it too does not identify any federal enclave.

7.     On or about April 26, 2019, Defendants demurred the FAC (the "Demurrer").  Before opposing the Demurrer, Plaintiff filed an *ex parte* application to continue the Demurrer hearing or for leave to file a second amended complaint (the "*Ex Parte* Application").  See **Exhibit D** (*Ex Parte* Application).  The *Ex Parte* Application was served on Defendants electronically on May 21, 2019.  Plaintiff attached to the *Ex Parte* Application a proposed second amended complaint (the "Proposed SAC"), which included a new allegation that identified, for the first time, Plaintiff's position, and more importantly, the location where Plaintiff worked: "Specifically, Defendants assigned Plaintiff RHODAN to work at the **Camp**

**Pendleton MCB Commissary** as a Shelf Stocker." *Id.* (*Ex Parte* Application), at Exhibit 1, ¶ 21 (emphasis added).

8. The Proposed SAC (like the FAC) alleges that the "duties and business activities of the Represented Employees were essentially the same as the duties and activities of [] Plaintiff," (Exhibit C (FAC), at ¶ 59; Exhibit D (*Ex Parte* Application), at Exhibit 1, ¶ 64), thereby alleging, by extrapolation, that at least some, if not all, of the Represented Employees also work at Camp Pendleton like Plaintiff. *See also* Exhibit C (FAC), at ¶ 63; Exhibit D (*Ex Parte* Application), at Exhibit 1, ¶ 68 ("At all times during the Representative Period, all the Represented Employees were employed in the same or similar job as Plaintiff RHODAN and were paid in the same manner and under the same standard employment procedures and practices as the Plaintiff.").

9. The claims in both the FAC and Proposed SAC, either all relate to actions, or employment practices, occurring at Plaintiff's place of employment, which the Proposed SAC attached to the *Ex Parte* Application identified for the first time as Camp Pendleton. With respect to the meal break California Labor Code violations cause of action, for example, the FAC and Proposed SAC allege:

> "[Defendants] failed to permit Plaintiffs and putative Class Members to take all of their compliant meal breaks . . . . Defendants, via its supervisors, would consistently shorten or refuse to provide Plaintiffs' meal breaks by pressuring its employees to return to work before the end of their full meal period or requiring its employees to work longer than the shifts assigned to them. On numerous occasions, Defendants scheduled Plaintiff RHODAN to work for less than five hours, but Defendants would require him to work longer than five hours and skip his meal period. For example, on January 26, 2018, Plaintiff RHODAN worked from 8:31 p.m. to 5:01 a.m. the following day, but Defendants only permitted Plaintiff RHODAN to take a 21-minute meal break during that workday. As an additional example, on July 26, 2018, Plaintiff RHODAN worked from 8:30 p.m. to 2:32 a.m. the following day, working a total of 6.03 hours.

> Defendants, however, failed to provide Plaintiff RHODAN a meal break on that day. Defendants have not paid Plaintiff RHODAN any premium pay for any unlawful meal periods taken."

*See* Exhibit C (FAC), at ¶¶ 36-42; Exhibit D (*Ex Parte* Application), at Exhibit 1, ¶¶ 30-36. Because Plaintiff was assigned to Camp Pendleton, as alleged in the Proposed SAC, these alleged actions (which Defendants deny), could only have happened at Camp Pendleton (if they happened at all). The same is true of Plaintiff's failure to pay for all accrued paid time off/vacation pay claim. Based on the identification of Plaintiff's work assignment at Camp Pendleton, Plaintiff could have only earned his wages and accrued any paid time off at Camp Pendleton:

> "In total, Plaintiff RHODAN worked approximately 568 hours during his employment with the Defendants. Pursuant to Defendants' written PTO policy, Plaintiff RHODAN earned approximately 20.7 hours of PTO ((568 hours / 30 hours) x 1.15 hours). Plaintiff RHODAN did not use any of his accrued PTO . . . Upon Plaintiff RHODAN's termination, however, Defendants paid Plaintiff RHODAN 12.45 hours of accrued PTO for a total of $165.59, when he was actually owed approximately $275.31. Upon information and belief, Defendants violated their own written PTO policy and underpaid Plaintiff RHODAN and similarly terminated putative Class Members all PTO wages earned during their employment with Defendants."

*See* Exhibit C (FAC), at ¶¶ 48-52; Exhibit D (*Ex Parte* Application), at Exhibit 1, ¶¶ 42-46.

10. Plaintiff's *Ex Parte* Application and Defendants' Demurrer were ultimately both denied. The June 7, 2019 order denying the Demurrer in the Removed Action directed that Defendants file an answer to the FAC within 20 days of the date of the order, by June 27, 2019. The parties are in the process of stipulating Plaintiff's filing of a second amended complaint.

11. Aside from a Civil Case Management Conference and OSC scheduled for July 12, 2019, and a hearing on the *pro hac vice* application submitted by

1  Cynthia A. Ricketts for Defendants scheduled for July 19, 2019, there are no other
2  upcoming proceedings scheduled in the Removed Action.

3  **II.     GROUNDS FOR FEDERAL JURISDICTION AND REMOVAL**

4        **A.   This Court Has Original, Federal Question Jurisdiction Over
5             Causes of Action Arising Within a Federal Enclave**

6        12.     A defendant may remove any civil action that is brought in a state
7  court over which the United States district courts have original jurisdiction. *See* 28
8  U.S.C. § 1441(a).

9        13.     Federal courts have original jurisdiction of all civil actions arising
10 under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331. An
11 action "arises under" federal law within the meaning of 28 U.S.C. § 1331 if either:
12 (1) federal law creates the cause of action, or (2) the plaintiff's right to relief
13 necessarily depends on the resolution of a substantial question of federal law." *City
14 of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 164 (1997) (citing *Franchise Tax
15 Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 13,
16 27-28 (1983)).

17       14.     Article I, Section 8, Clause 17 of the United States Constitution (the
18 "Enclave Clause") provides that Congress shall have the power to exercise
19 exclusive jurisdiction over all places purchased by the consent of the legislature of
20 the state in which the same shall be. *Stiefel v. Bechtel Corp.*, 497 F. Supp. 2d 1138,
21 1147 (S.D. Cal. Apr. 10, 2007); *see Swords to Plowshares v. Kemp*, 423 F. Supp.
22 2d 1031, 1034 (N.D. Cal. 2005) ("Under the Constitution, the United States has the
23 power to acquire land from the states for certain specified uses and to exercise
24 exclusive jurisdiction over such lands, which are known as federal enclaves . . . .
25 [F]ederal enclaves are under the exclusive jurisdiction of the United States,
26 meaning the property and activities of individuals and corporations within that
27 territory are also under federal jurisdiction.").
28

15. The United States district courts, including this Court, accordingly, have (original) federal question jurisdiction over causes of action arising within a federal enclave. *See Paul v. United States*, 371 U.S. 245, 267 (1963) ("Whether the United States has acquired exclusive jurisdiction over a federal enclave is a federal question."); *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1250 (9th Cir. 2006) ("Federal courts have federal question jurisdiction over tort claims that arise on 'federal enclaves.'").

16. In other words, federal enclave jurisdiction is a part of a court's federal question jurisdiction under 28 U.S.C. § 1331. *Willis v. Craig*, 555 F.2d 724, 725-26, 726 n.4 (9th Cir. 1977) (per curiam); *see Jackson v. Mission Essential Personnel, LLC*, No. CV 11-1444-R, 2012 WL 13015000, at *2 (C.D. Cal. Apr. 13, 2012) (finding removal of state action proper where Court "possesse[d] federal question jurisdiction pursuant to the Federal Enclave Doctrine"); *In re High-Tech Emp. Antitrust Litig.*, 856 F. Supp. 2d 1103, 1125 (N.D. Cal. 2012) (in federal enclave cases, federal question jurisdiction applies when the locus in which the claim arose is within a federal enclave); *see also Akin v. Ashland Chem. Co.*, 156 F.3d 1030, 1034 n.1 (10th Cir. 1998) (federal courts have jurisdiction over litigation arising from federal enclaves).

17. Here, the Court has federal question (federal enclave) jurisdiction over the Removed Action under 28 U.S.C. § 1331.

  **B.** **The Locus of Plaintiff's Claims Is Camp Pendleton, A Federal Enclave Subject to Federal Question Jurisdiction**

18. The Proposed SAC in the *Ex Parte* Application identifies, for the first time in the Removed Action, that "Defendants assigned Plaintiff RHODAN to work at the **Camp Pendleton MCB Commissary** as a Shelf Stocker." *See* Exhibit D (*Ex Parte* Application), at Exhibit 1, ¶ 21 (emphasis added). Thus, the locus of all of Plaintiff's claims, which arise out of his employment, is Camp Pendleton. *See Cal. ex. rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 838 (9th Cir. 2004) ("well-pleaded"

complaint rule applies in determining federal jurisdiction); *Zuniga v. Chugach Maint. Servs.*, No. CVF060048AWILJO, 2006 WL 769317, at *3 (E.D. Cal. Mar. 24, 2006) (under the "well-pleaded complaint" rule, courts look to what "necessarily appears in the plaintiff's statement of his own claim in the bill or declaration" in assessing removal) (internal quotation marks omitted); *see also Olig v. Xanterra Parks & Resorts, Inc.*, No. CV 13-15-BLG-DLC-RKS, 2013 WL 3936904, at *2 (D. Mont. July 30, 2013) ("Assertion of the federal enclave doctrine is not considered a defense for purposes of the well-pleaded complaint rule because removal may still be appropriate when federal law not only displaces state law, but also confers a federal remedy on the plaintiffs or compels them to rely, explicitly or implicitly, on federal propositions.") (internal quotation marks omitted).

19. Camp Pendleton is a federal enclave, subject to federal question jurisdiction. *See United States v. Jenkins*, 734 F.2d 1322, 1325 (9th Cir. 1983) (stating "Camp Pendleton . . . is a federal enclave"); *Shurow v. Gino Morena Enters., LLC*, No. 3:16-cv-02844-L-KSC, 2017 WL 1550162, at *2 (S.D. Cal. May 1, 2017) (recognizing "Camp Pendleton is a federal enclave established no later than December 31, 1942" and dismissing claims with prejudice, including wage and hour claims); *Scott v. Gino Morena Enter. LLC*, No. SACV 14-02046 JVS (DFMx), 2015 WL 847160, at *1, 3 (C.D. Cal. Feb. 23, 2015) (concluding the court had "federal question jurisdiction over [the plaintiff's] state law claims because they ar[o]se from actions which allegedly occurred at a barbershop on a federal enclave," "Camp Pendleton"); *Stiefel*, 497 F. Supp. 2d at 1144-45 (judicially noticing that Camp Pendleton is a federal enclave); *United States v. Fallbrook Pub. Util. Dist.*, 110 F. Supp. 767, 770-72 (S.D. Cal. 1953) (discussing chain of title and the United States' acquisition of Camp Pendleton in 1941 through condemnation proceedings).

20. Moreover, employment claims in particular such as those asserted here, are subject to federal question jurisdiction when the place of employment was

a federal enclave. "In the context of claims by employees against contractor employers operating on a federal enclave, the [Federal Enclave] Doctrine applies if the plaintiff's place of employment was located on the federal enclave." *Shurow*, 2017 WL 1550162, at *2 (internal quotation marks omitted) (rejecting argument that because decision to terminate plaintiff was made at off-site corporate headquarters, federal enclave jurisdiction did not apply); *see Powell v. Tessada & Assocs., Inc.*, No. C 04-05254 JF, 2005 WL 578103, at *2 (N.D. Cal. Mar. 10, 2005) (finding employment state law claims could not be maintained because "regardless of where the decision not to retain Plaintiffs was made, the decision reflects Defendants' employment practice on the enclave"); *Lockhart v. MVM, Inc.*, 175 Cal. App. 4th 1452, 1460 (2009) ("[Plaintiff] was, at all relevant times, employed by a federal contractor working on a federal enclave. She has failed to raise a triable issue of fact as to whether her employment claims arose outside of the federal enclave.").

21.  Indeed, federal enclave jurisdiction exists even where, unlike here, some of the alleged conduct that is the basis of the claims occurred outside the enclave. *See Jamil v. Workforce Res., LLC*, No. 18-CV-27-JLS (NLS), 2018 WL 2298119, at *4 (S.D. Cal. May 21, 2018) ("The Court finds that federal jurisdiction was properly pled in Plaintiffs' Complaint. Although some events took place on Camp Pendleton and others took place at Defendants' office, it is clear that the majority of the pertinent events took place on a federal enclave. The allegations stem from Plaintiffs' employment and work performed at Camp Pendleton. This is sufficient for federal jurisdiction.").

22.  Here, Plaintiff's claims, brought on behalf of both a class and PAGA representative action, arise from Plaintiff's employment with JOI, at Camp Pendleton. *See* Exhibit D (*Ex Parte* Application), at Exhibit 1, ¶ 21. The claims either all relate to, actions, or employment practices, occurring at Plaintiff's place of employment at Camp Pendleton. *See Jamil*, 2018 WL 2298119, at *4 ("There is

no question that [federal question jurisdiction exists because] some of the events alleged in the Complaint took place on Camp Pendleton. Plaintiffs allege they were not given proper rest and meal breaks; this naturally would have occurred while they were role playing at the Afghan village on Camp Pendleton . . . . Plaintiffs also allege they were not given breaks after five consecutive hours worked; these hours would have taken place at Camp Pendleton, not at Defendants' office.").

23. That is to say, the events that form the basis of Plaintiff's claims, in short, arise out of Plaintiff's employment with JOI, which consisted of an assignment at Camp Pendleton, a federal enclave. All of Plaintiff's work was performed there, making Camp Pendleton Plaintiff's place of employment for purposes of the federal enclave doctrine. Accordingly, Plaintiff states claims "arising under" federal law and the Removed Action is subject to this Court's original federal question jurisdiction. *See Jamil*, 2018 WL 2298119, at *1-4 (finding "federal jurisdiction [was] proper based on the federal enclave doctrine" in class action "seeking recovery of unpaid wages and penalties under California Business and Professions Code (B&PC) § 17200, et seq., and Labor Code §§ 200, 226, 226.7, 510, 1194, and 1198," where some alleged events took place at Camp Pendleton).

24. And, Plaintiff cannot try to avoid federal jurisdiction by conveniently omitting the fact giving rise to it (assignment at Camp Pendleton). *See Fung v. Abex Corp.*, 816 F. Supp. 569, 571 (N.D. Cal. 1992) (a plaintiff cannot "'avoid federal jurisdiction simply by omitting from the complaint federal law essential to his claim, or by casting in state law terms a claim that can be made only under federal law'"—"[f]ailure to indicate the federal enclave status and location of the exposure will not shield plaintiffs from the consequences of this federal enclave status") (quoting *Harper v. San Diego Transit Corp.*, 764 F.2d 663 (9th Cir. 1985)). Removal here is in all respects proper.

## III. COMPLIANCE WITH REMOVAL STATUTE

25. **Removal to Proper Court.** Assignment to this Court is proper because it is part of the "district and division" embracing the place where the Removed Action was filed—Superior Court, San Diego County. *See* 28 U.S.C. § 1446(a).

26. **Removal is Timely.** The Removed Action was not removable under the federal enclave doctrine based on the original Complaint because the original Complaint did not identify the locus of Plaintiff's claims, nor that the locus was in any federal enclave. Likewise, the Removed Action was not removable under the federal enclave doctrine based on the Amended Complaint or the FAC because neither pleading identified the locus of the claims, nor that the locus was in any federal enclave. The *Ex Parte* Application, however, which was served on May 21, 2019, rendered the Removed Action removable under the federal enclave doctrine because it identified the locus of the claims—Camp Pendleton, which is a federal enclave. This Notice of Removal is therefore timely under 28 U.S.C. § 1446(b)(3) because it is being filed within thirty (30) days of Defendants' receipt of "an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." *See also Durham*, 445 F.3d at 1250 (where an initial pleading does not affirmatively reveal the facts necessary for federal court jurisdiction, the 30-day time period for removal starts to run when a defendant receives "a copy of an amended pleading, motion, order or other paper" from which it can determine that the case is removable") (citing 28 U.S.C. § 1446(b)(3)).

27. **Pleadings and Process.** Pursuant to 28 U.S.C. § 1446(a), attached hereto as **Exhibits A**, **B**, **C**, **D**, and **E** is a copy of the docket and all process, pleadings, and orders served on Defendants in the Removed Action.

28. **Filing and Service.** Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon Plaintiff in the Removed Action and a

-12-
NOTICE OF REMOVAL OF CIVIL ACTION

1 copy, along with a Notice of Filing of Notice of Removal, is being filed with the
2 Clerk of the Superior Court of California, San Diego County. A copy of said
3 Notice of Filing of Notice of Removal (without exhibits) is attached hereto as
4 **Exhibit F**.

5     29. **Other Defendants.** All named defendants consent to removal of the
6 action. The Doe defendants are disregarded for the purposes of removal. *See* 28
7 U.S.C. § 1446(b)(2)(A) (only "defendants who have been properly joined and
8 served must join in or consent to the removal of the action").

9     30. **Proper Signature.** Counsel for Defendants hereby certifies, pursuant
10 to 28 U.S.C. § 1446(a), that this Notice of Removal is signed pursuant to Rule 11 of
11 the Federal Rules of Civil Procedure.

12     31. Based upon the foregoing, this Court has jurisdiction over this matter
13 pursuant to 28 U.S.C. § 1331, and the claims may be removed to this Court under
14 28 U.S.C. § 1441(a).

## IV. REQUEST FOR ADDITIONAL ARGUMENTS AND EVIDENCE, IF NECESSARY

17     32. In the event that Plaintiff files a request to remand, or the Court
18 considers remand *sua sponte*, Defendants respectfully request the opportunity to
19 submit additional argument or evidence in support of removal.

20     WHEREFORE, this action should proceed in the United States District Court
21 for the Southern District of California, as an action properly removed thereto.

Dated: June 17, 2019            Respectfully submitted,

SACKS, RICKETTS & CASE LLP
By */s/ Merrili Escue*
    MERRILI ESCUE
    SACKS, RICKETTS & CASE LLP

*Attorneys for Defendants*
JOB OPTIONS, INC., JEFFREY A.
JOHNSON, RICHARD SKAY, and
JOUNINA BOKA

## EXHIBITS TABLE OF CONTENTS

Exhibit A .................................................................................................... 15

Exhibit B .................................................................................................... 22

Exhibit C .................................................................................................... 32

Exhibit D .................................................................................................... 68

Exhibit E ................................................................................................... 143

Exhibit F ................................................................................................... 385